USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 4/30/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

XIFEI XU,

                Plaintiff,

      v.

CITY OF NEW YORK; NEW YORK CITY
POLICE DEPARTMENT; POLICE
OFFICER JOSEPH BOZZO, *in his official
and individual capacity as a New York City
Police Officer*; POLICE SERGEAT
NICHOLAS GULOTTA, *in his official and
individual capacity as a New York City Police
Officer*; JOHN DOE 1, *in his official and
individual capacity as a New York City Police
Officer*,

                Defendants.

No. 18-CV-1222 (RA)

OPINION & ORDER

---

On February 12, 2018, Plaintiff Xifei Xu filed this action against Defendants City of New York, New York City Police Department, Officer Joseph Bozzo, Sergeant Nicholas Gulotta, and John Doe 1, alleging, among other things, false arrest under 42 U.S.C § 1983 and malicious prosecution under state law. Now before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the motion is granted.

## BACKGROUND[1]

On the afternoon of March 8, 2017, Plaintiff was driving alone through

---

[1] The following facts are drawn from Defendants' Rule 56.1 Statement ("Defs.' 56.1 Stmt."), Plaintiff's Rule 56.1 Statement ("Pl.'s 56.1 Stmt."), and supporting documentation. The facts are undisputed unless otherwise noted. Where disputed, they are construed in the light most favorable to Plaintiff. *See Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011).

Manhattan. After Plaintiff pulled over into a parking lot "to check his GPS" near 177 Mott Street, Pl.'s 56.1 Stmt. ¶ 3; *see also* Dkt. 63, Ex. I (Pl.'s NYPD Arrest Report), Officer Bozzo, along with his partner and non-party Officer Valitutto, "observ[ed] that the car [P]laintiff was driving had an illegible, ripped temporary Ohio license plate."[2] Pl.'s 56.1 Stmt. ¶ 7. Officer Bozzo thus approached Plaintiff's car and asked him for his driver's license and registration.[3]

Plaintiff gave Officer Bozzo his Pennsylvania learner's permit, which "bore text that had been whited out and then stamped over with ink," as well as his Chinese driver's license.[4] *Id*. ¶¶ 10-11. Officer Bozzo then asked Plaintiff about his Pennsylvania learner's permit, specifically why there was an alteration – that is, use of whiteout and ink – on it. *See* Dkt. 63, Ex. G (Transcript of Valitutto's Dep.) at Tr. 20:14-16 ("We recognize[d] that information was changed on the document and whited out. So we asked him how the document got to be like that."). Plaintiff responded that "an employee at the Pennsylvania Department of Transportation ('DOT') had given it to him in that condition." Pl.'s 56.1 Stmt. ¶ 13; *see* Dkt. 63, Ex. B at Tr. 24:20-21 ("I told him that,

---

[2] Plaintiff disputes that the license plate was illegible, *see* Pl.'s 56.1 Stmt. ¶ 7, but does not dispute that "the Ohio license plate was torn and was missing the month that the plate was to expire," *id*. ¶ 8. Defendants submitted a picture of the license plate as it appeared on March 8, 2017, which confirms that it was ripped over its expiration date. *See* Dkt. 63, Ex. E (Pl.'s License Plate); *see also* Dkt. 63, Ex. D (Transcript of Bozzo's Dep.) at Tr. 20:7-9 (stating that the month of the license plate's expiration date was not legible).

[3] Plaintiff disputes this fact solely on the basis that "Officer Bozzo asked [Plaintiff] for his 'ID.'" Pl.'s 56.1 Stmt. ¶ 9.

[4] Plaintiff asserts that his Chinese driver's license is "a full license and it's effective and it's a formal license." Dkt. 63, Ex. B (Transcript of Pl.'s Dep.) at Tr. 20:9-10. According to Plaintiff, upon providing his Chinese driver's license, "Officer Bozzo told Plaintiff that it was fake and demanded to see further identification." Pl.'s 56.1 Stmt. ¶ 31.

exactly those change[s] w[ere] done by the DMV.").[5]

Officer Valitutto then called the Pennsylvania DMV to ask about the appearance of Plaintiff's learner's permit. He spoke to a representative of the Pennsylvania DMV and asked, without offering specifics about Plaintiff's situation, "if she would ever issue a document that's been whited out." Dkt. 63, Ex. G at Tr. 33:9-10. The Pennsylvania DMV representative "stated no" and that "[t]hey would just reprint the document."[6] *Id.* at Tr. 33:12-13. With this information in hand, Officers Bozzo and Valitutto contacted Defendant Sergeant Gulotta, who arrived on the scene in approximately five minutes. After they presented the facts to Sergeant Gulotta, he "verified [P]laintiff's arrest." Pl.'s 56.1 Stmt. ¶ 24; *see also* Dkt. 63, Ex. D at Tr. 37:2-16.

Plaintiff was subsequently arrested for possession of a forged instrument in the third degree under New York Penal Law § 170.20. *See* Dkt. 63, Ex. I. At the precinct, Plaintiff was issued a desk appearance ticket. *See* Dkt. 63, Ex. J (Pl.'s Desk Appearance Ticket). On March 22, 2017, Officer Bozzo drafted the criminal court complaint, charging Plaintiff with possession of a forged instrument in the third degree based on the Pennsylvania learner's permit. *See* Dkt. 63, Ex. K (Pl.'s Criminal Court Complaint)

---

[5] The parties and the record refer to the "Pennsylvania Department of Transportation" and "Pennsylvania DMV" interchangeably. For purposes of this opinion, the Court refers to it only as the "Pennsylvania DMV."

[6] Plaintiff repeatedly "denies that Officer Valitutto spoke to someone at the Pennsylvania Department of Transportation (the 'DOT') about the condition of the permit." *See, e.g.*, Pl.'s 56.1 Stmt. ¶ 14. But Plaintiff does not cite to anything in the record to support this assertion. Instead, he claims that "Officer Valitutto is a biased witness, and the only evidence about the substance of his call with the DOT is [Officer Valitutto's] testimony." *Id.* ¶¶ 14, 18, 19. Plaintiff fails, however, to point to anything in the record contradicting the fact that Officer Valitutto made this call. In addition, Defendants submitted Officer Valitutto's phone records from March 8, 2017 showing that he called a number associated with the Pennsylvania DMV around the time of Plaintiff's arrest. *See* Dkt. 63, Ex. H (Valitutto's Phone Records); Dkt. 72, Ex. 1 (Google Search for Pennsylvania DMV's Phone Number).

("Upon speaking to the defendant regarding the ripped Ohio temporary dealer plate, he gave me a forged Pennsylvania learner's permit."). In sharing this information with the New York County District Attorney's Office (the "DA's Office"), Officer Bozzo noted Plaintiff's statement that the Pennsylvania DMV had given him the learner's permit in that condition. *See* Pl.'s 56.1 Stmt. ¶ 29; Dkt. 63, Ex. L (DA's Office Datasheet). In May, as required by the desk appearance ticket, Plaintiff appeared in court. *See* Dkt. 63, Ex. B at Tr. 35:15-16. This was his sole appearance in court in connection with this incident.

On June 9, 2017, the DA's Office moved to dismiss the charges against Plaintiff. *See* Dkt. 63, Ex. M (Pl.'s Certificate of Disposition). This decision was made in light of a letter obtained from the Pennsylvania DMV's office by Plaintiff's counsel. *See* Dkt. 63, Ex. N (June 5, 2017 DMV Letter). The letter "confirm[ed] that alterations on [Plaintiff's] learner's permit were made by PennDOT staff and not your client, Xifei Xu." *Id*. It explained that during Plaintiff's February 23, 2017 appointment at the DMV to take his driver's test, the following occurred:

> After the examiner stamped the date on Mr. Xu's permit, he discovered that he did not advance the date from February 22, 2017 to February 23, 2017. The examiner adjusted the date stamp and re-stamped February 23, 2017, on the second line of his learner's permit; however, since an application only has three (3) opportunities to pass the skills test on a given permit, staff applied white out to both dates of Mr. Xu's permit, and hand wrote "23" on the top line to correspond with the fail result.

*Id.*

On February 14, 2018, Plaintiff filed this action. *See* Dkt. 3. Defendants filed their answer on June 29, 2018. *See* Dkt. 23.[7] Shortly after discovery was completed,

---

[7] On June 4, 2019, Plaintiff requested leave to file an amended complaint to add a new defendant. *See* Dkt. 38. Defendants opposed this request. *See* Dkt. 39 (arguing that Plaintiff had several months during which he could have moved to join additional parties or amend the

4

Defendants filed the present motion for summary judgment on January 15, 2020. *See* Dkt. 62. Plaintiff opposed the motion on March 1, 2020, *see* Dkt. 69, and Defendants filed a reply shortly thereafter, *see* Dkt. 72.

## LEGAL STANDARD

Summary judgment is warranted if the movant shows that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law'" and genuinely in dispute if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of showing that it is entitled to summary judgment. *See Anderson*, 477 U.S. at 256. The Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012). In conducting this inquiry, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011).

## DISCUSSION

Plaintiff initially alleged a number of federal claims under 42 U.S.C. § 1983, as

---

complaint without leave of the Court but failed to do so). The Court denied Plaintiff's request to amend as untimely and without good cause. *See* Dkt. 42 (citing *Parker v. Columbia Pictures Industries*, 204 F.3d 326, 340 (2d Cir. 2000) ("[A] district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause.")); *see also* Dkt. 53.

well as several state law claims. Now, however, he only seeks to pursue two claims: false arrest under § 1983 and malicious prosecution under New York law. For the reasons provided below, the Court concludes that Defendants are entitled to summary judgment as to both claims.

## I. Claims Against the NYPD

As an initial matter, Plaintiff's claims against the NYPD must be dismissed because "the NYPD is a non-suable agency of the City." *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); *see also* N.Y.C. Charter ch. 17 § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law.").

## II. Abandoned Claims

In his opposition to Defendants' motion for summary judgment, Plaintiff asserts that he "only opposes [Defendants'] motion to the extent that it seeks to dismiss [his] federal false arrest claims and state malicious prosecution claims." Pl.'s Opp. at 1; *see also* Defs.' Reply at 7 n.4 ("Plaintiff, in his opposition, only advances a federal claim for false arrest and a state law claim for malicious prosecution."). As such, Defendants ask the Court to find the claims that Plaintiff has not addressed in his opposition – that is, his "state law false arrest claim, his denial of a right to fair trial claim, his federal malicious prosecution claim, his claims against the City of New York, his Brady violation claim, and his claims against Sergeant Gulotta" – to be abandoned. Defs.' Reply at 2. The Court will do so.

"Federal courts may deem a claim abandoned when a party moves for summary

judgment on one ground and the party opposing summary judgment fails to address the argument in any way." *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003). Even though Defendants addressed each of Plaintiff's claims in their summary judgment motion, Plaintiff failed to respond to all but two of Defendants' arguments. Moreover, Plaintiff explicitly stated the he will not defend the unaddressed claims because he "only opposes the motion to the extent that it seeks to dismiss [his] federal false arrest claims and state malicious prosecution claims." Pl.'s Opp. at 1.

The Court thus concludes that "an inference may be fairly drawn from [Plaintiff's] papers" that "abandonment was intended" as to all claims except for his federal false arrest and state law malicious prosecution claims. *Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014) ("[P]reparation of a response to a motion for summary judgment is a particularly appropriate time for a non-movant party to decide whether to pursue or abandon some claims or defenses."). For that reason, the Court reviews only whether Defendants are entitled to summary judgment as to those two remaining claims.

### III. False Arrest Under § 1983

Based on his arrest on March 8, 2017 for criminal possession of a forged instrument in the third degree in violation of § 170.20, Plaintiff alleges a false arrest claim under § 1983 against Officer Bozzo.[8] Officer Bozzo argues that he is entitled to summary judgment on two grounds. He contends first that there was probable cause to arrest Plaintiff, *see* Defs.' Mot. at 4-6, and second that he should nonetheless be entitled to qualified immunity, *see id.* at 14-17. The Court agrees that Officer Bozzo is entitled to

---

[8] This analysis is solely focused on Officer Bozzo's conduct. As to the other two individual defendants, Plaintiff does not oppose granting summary judgment in favor of Sergeant Gulotta for lack of personal involvement in the alleged harm, *see* Pl.'s Opp. at 1; Defs.' Reply at 2, and neither party mentions Defendant John Doe 1 in their briefing.

summary judgment because there is no genuine dispute of fact that he had probable cause to arrest Plaintiff on March 8, 2017.  For this reason, the Court need not address the alternative argument regarding qualified immunity.

To establish a successful false arrest claim, a plaintiff must show that "(1) the defendant intended to confine [him], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged."[9] *Weyant v. Okst*, 101 F.3d 845, 853 (2d Cir. 1996).  Here, there is no dispute that Plaintiff was arrested.  The only question, therefore, is whether the confinement – that is, the arrest – was privileged or justified.

"Under New York law, the existence of probable cause is an absolute defense to a false arrest claim." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006).  "Probable cause to arrest exists when the arresting officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (quoting *Weyant*, 101 F.3d at 852).  This inquiry depends on "whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Jaegly*, 439 F.3d at 153 (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).  In analyzing a false arrest claim, the Court must determine whether the arresting officer had

---

[9] Plaintiff brings this claim under § 1983, but "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). Accordingly, the Second Circuit has concluded that a claim for false arrest under § 1983 "is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996); *see also Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004) ("In analyzing § 1983 claims for unconstitutional false arrest, we have generally looked to the law of the state in which the arrest occurred.").

8

"probable cause to believe that the person arrested has committed *any* crime," not solely the crime for which the person was actually arrested. *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007) (emphasis added); *see also Figueroa v. Mazza*, 825 F.3d 89, 99 (2d Cir. 2016) ("The existence of probable cause to arrest – even for a crime other than the one identified by the arresting officer – will defeat a claim of false arrest under the Fourth Amendment.").

The Court agrees with Officer Bozzo that, based on the record before it, there is no genuine dispute of fact that he did indeed have probable cause to arrest Plaintiff on March 8, 2017. *See Weyant*, 101 F.3d at 852 ("The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers."). Under New York law, "[a] person is guilty of criminal possession of a forged instrument in the third degree when, with knowledge that it is forged and with intent to defraud, deceive or injure another, he utters or possesses a forged instrument." N.Y.P.L. § 170.20. Here, "the facts known by [Officer Bozzo] at the time of the arrest objectively provided probable cause to arrest." *Jaegly*, 439 F.3d at 153

The condition of Plaintiff's Pennsylvania learner's permit, which is not in dispute, was itself sufficient to establish probable cause that Plaintiff possessed a forged instrument. *See* Dkt. 63, Ex. G at Tr. 20:14-15 ("We recognize that information was changed on the document and whited out."). When the officers approached Plaintiff in his car after observing his license, they asked for his identification. Plaintiff gave them his Pennsylvania learner's permit, which contained obvious alterations. *See* Dkt. 63, Ex. F. On the top left corner, under where it said "Valid for the following exam(s): DRIVER

9

EXAM," whiteout was used to cover two lines and someone had handwritten "23" as part of the date over the whiteout. *See id.* Even though it has since become clear that it was the Pennsylvania DMV which altered Plaintiff's learner's permit, it would have been reasonable for an officer at the time of Plaintiff's arrest to have assumed that a learner's permit altered in this fashion constituted a criminally forged instrument. As such, based on his observation of Plaintiff's learner's permit, Officers Bozzo had probable cause to arrest Plaintiff.[10] *See Ikezi v. City of New York*, No. 14-CV-5905, 2017 WL 1233841, at *6 (E.D.N.Y. Mar. 31, 2017) ("Based on the characteristics of the license plate, the officers reasonably believed that Plaintiffs were in possession of a forged or fictitious instrument.").

Officer Bozzo's NYPD training offers additional support for the finding that he had probable cause at the time of Plaintiff's arrest. The record contains evidence that NYPD officers receive Auto Crimes training, during which the NYPD "went over many different states' learner's permits" and taught officers that "[a] state DMV would never issue – is not supposed to issue a document that has been whited out or information changed on it." Dkt. 63, Ex. G. at Tr. 29:7-8, 12-14. In the criminal court complaint, Officer Bozzo also explained how his training, at least in part, led to his belief at the time that Plaintiff's learner's permit was forged:

> I examined the above mentioned learners permit and I know that the above mentioned learners permit is forged based on my training and experience as a police officer and the following observations of the permit: The expiration year of

---

[10] Although Plaintiff also provided his Chinese driver's license to the officers, *see* Pl.'s 56.1 Stmt. ¶ 10, that does not change this analysis. Even if his Chinese driver's license was a sufficient identification under New York law, as Plaintiff contends, *see* Pl.'s Opp. at 1, he does not deny that he also provided his Pennsylvania learner's permit. The officers, therefore, were still within reason to conclude that Plaintiff possessed a forged instrument in violation of § 170.20, even if he was driving pursuant to a valid Chinese driver's license.

10

the permit and the top right corner of the permit has been altered by the defendant making it unreadable.

Dkt. 63, Ex. K.[11] Thus, based on Officer Bozzo's observation and training, the appearance of Plaintiff's Pennsylvania learner's permit alone was sufficient to establish probable cause for his arrest in violation of § 170.20.

The First Department recently held as much when presented with similar circumstances. In *Thompson v. City of New York*, 159 A.D.3d 654 (1st Dep't 2018), the plaintiff, who was also arrested for violating §170.20, alleged that he was falsely arrested "due to the erroneous conclusion that the temporary license plate on his vehicle was forged." *Id.* at 654. Dismissing this claim, the First Department explained that "based on his training and experience with similar license plates," the police officer had "a reasonable basis for him to conclude that plaintiff's temporary plate was forged, granting him probable cause to arrest plaintiff." *Id*. (noting that "it was not necessary for the police to show that plaintiff had the intent necessary to secure a conviction of third-degree criminal possession of a forged instrument").

The record supporting the probable cause determination here is even stronger than that in *Thompson*. In addition to his observations and training, Officer Bozzo received information from the Pennsylvania DMV to support his belief that Plaintiff's Pennsylvania learner's permit was forged. *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically possible

---

[11] In the criminal court complaint, Officer Bozzo wrote that the alterations were on the "top right corner" of the learner's permit when in fact they were on the top left corner. During his deposition, Officer Bozzo explained that he made this mistake because he did not have the learner's permit in front him when drafting the criminal complaint weeks after Plaintiff's arrest. *See* Dkt. 63, Ex. D at Tr. 53:9-13.

11

claim of innocence before making an arrest."). Before making the arrest, his partner, Officer Valitutto, "called the Pennsylvania DMV" to confirm Plaintiff's statement that "this is how the DMV issued [the learner's permit] to him." Dkt. 63, Ex. G at Tr. 20:19-23. He spoke to a Pennsylvania DMV representative and "explained to her [that he] was an officer from the New York City Police Department. [He] gave her [his] name and shield number." *Id.* at Tr. 33:4-7. He then "asked her if she would ever issue a document that's been whited out." *Id.* at Tr. 33:9-10. She "stated no," explaining that the Pennsylvania DMV "would just reprint the document." *Id.* at Tr. 33:12-13. The fact that Officer Bozzo obtained this information about the Pennsylvania DMV's normal course of operations when making the arrest is entitled to substantial weight. *See Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) ("When making a probable cause determination, police officers are 'entitled to rely on the allegations of fellow police officers.'"); *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) ("When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity." (citation omitted)). Speaking to the Pennsylvania DMV representative not only contradicted Plaintiff's statement that he was given the learner's permit in that condition, but also bolstered Officer Bozzo's belief based on his observations and training that Plaintiff had altered the document.

On a final note, Officer Bozzo also received approval for the arrest prior to it being effectuated. Before making the arrest, Officers Bozzo and Valitutto contacted Sergeant Gulotta who subsequently came to the scene. As Officer Valitutto explained:

> We showed [Sergeant Gulotta] the temporary license plate, then we showed him the learner's permit that was whited out. I told him that I spoke to the DMV and they said they would never issue a document that's been whited out.

Dkt. 63, Ex. G. Sergeant Gulotta then "told [them] to get an arrest time and bring [Plaintiff] back to the precinct." *Id.* That a more senior official reviewed the facts available and approved of the arrest provides further support for finding that probable cause existed here. *See Hart v. City of New York*, No. 11-CV-4678 (RA), 2013 WL 6139648, at *4-5 (S.D.N.Y. Nov. 18, 2013) (concluding that the defendant had probable cause in part because the information was relayed to and approved by NYPD sergeants).

Plaintiff, meanwhile, does not cite to anything in the record creating a dispute of fact regarding probable cause for his arrest. Instead, Plaintiff makes generalized and speculative assertions that Defendants' evidence is insufficient. In his Rule 56.1 Statement, for instance, Plaintiff disputes that Officer Valitutto spoke to the Pennsylvania DMV representative and was told that the DMV would not alter a document in this way. But to dispute this fact, Plaintiff merely claims that "Officer Valitutto is a biased witness" and that "the only evidence about the substance of his call with the DOT is his testimony."[12] Pl.'s 56.1 Stmt. ¶ 20; *see also id.* ¶¶ 14, 17, 18, 19, 21. For this reason, Plaintiff asserts "[Officer] Valitutto's testimony alone cannot establish the substance of his conversation with the Pennsylvania DMV as a matter of law." Pl.'s Opp. at 3.

The Court disagrees. Officers Bozzo and Valitutto both testified that Officer Valitutto spoke with a Pennsylvania DMV representative, who said the Pennsylvania

---

[12] Plaintiff also argues that Officer Valitutto's "description of the length and substance of the conversation [with the Pennsylvania DMV representative] defies common sense" because "[c]ommon sense suggests that doing anything with any DMV takes longer than 10 minutes." Pl.'s Opp. at 3. But the Court finds Officer Valitutto's deposition testimony to be credible. He explained that the call lasted approximately ten minutes, during which time he listened to his automated options, waited several minutes for a representative, and then spoke with the representative to ask whether the Pennsylvania DMV would manually alter a learner's permit. *See* Dkt. 63, Ex. G at Tr. 32:13-25, 33:22-25, 34:2-6. Without pointing to anything in the record that contradicts Officer Valitutto's testimony, and with the phone records to corroborate it, the Court has no reason to doubt it.

13

DMV would not alter a learner's permit in this way.  Defendants also submitted Officer Valitutto's cell phone records from March 8, 2017, which show that he called a number associated with the Pennsylvania DMV around the time of Plaintiff's arrest.  *See* Dkt. 63, Ex. H; Dkt. 72, Ex. 1.  The record, therefore, amply supports Defendants' version of the facts.  By contrast, Plaintiff offers nothing except for "mere conjecture or speculation," which "does not provide a basis upon which to deny [Defendants' summary judgment] motion."  *Argus v. Eastman Kodak Co.*, 801 F.2d 38, 42 (2d Cir. 1986).  To defeat summary judgment, a "non-moving party may not rely on conclusory allegations or unsubstantiated speculation."  *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

"Probable cause is a 'fluid' standard that 'does not demand hard certainties or mechanistic inquiries'; nor does it 'demand that an officer's good-faith belief that a suspect has committed or is committing a crime be correct or more likely true than false." *Figueroa*, 825 F.3d at 99 (quoting *Zalaski v. City of Hartford*, 723 F.3d 382, 389, 390 (2d Cir. 2013)).  Based on the physical appearance of Plaintiff's learner's permit, Officer Bozzo's training, and Officer Valitutto's conversation with the Pennsylvania DMV representative, Officer Bozzo reasonably concluded that Plaintiff possessed a forged instrument in violation of § 170.20.  Indeed, Plaintiff admits that "[i]f [Officer] Valitutto's testimony *is true*, then Defendants would have had probable cause."  Pl.'s Opp. at 3.  Therefore, without any genuine dispute of fact as to whether Officer Bozzo had probable cause to arrest Plaintiff, Defendants are entitled to summary judgment as to this false arrest claim.

**IV.    Malicious Prosecution Under State Law**

Plaintiff also asserts a malicious prosecution claim under New York law.  *See*

14

Pl.'s Opp. at 1. Defendants contend that they are entitled to summary judgment because they had probable cause to commence the prosecution against Plaintiff, which "is a complete defense to a claim of malicious prosecution in New York."[13] *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003); *see also* Defs.' Mot. at 23.

To prevail on a malicious prosecution claim under New York law, a plaintiff must establish "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Jocks*, 316 F.3d at 136. In the context of malicious prosecution, "probable cause is defined as 'the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of.'" *Diop v. City of New York*, 50 F. Supp. 3d 411, 421 (S.D.N.Y. 2014) (quoting *Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir. 1994)). "A finding of probable cause supporting an arrest defeats a malicious prosecution claim unless plaintiff can demonstrate that at some point subsequent to the arrest, additional facts came to light that negated probable cause." *Dukes v. City of New York*, 879 F. Supp. 335, 342 (S.D.N.Y. 1995).

In light of the fact that there was probable cause for Plaintiff's arrest, as explained in the prior section, "a reasonably prudent person [would] believe [P]laintiff [was] guilty" of possessing a forged instrument and thus would have had probable cause to initiate the

---

[13] Defendants also argue that Plaintiff has failed to show that Defendants acted with malice – another requisite element of a malicious prosecution claim under New York law, *see Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003). *See* Defs.' Mot. at 7-9. Because the Court concludes that Defendants had probable cause to commence the proceeding against Plaintiff, it need not address whether the prosecution was motivated by malice.

15

prosecution against him. *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003). To overcome that conclusion, Plaintiff is required to show that "at some point subsequent to [his] arrest, additional facts came to light that negated probable cause." *Dukes*, 879 F. Supp. at 342. Plaintiff, however, has not made this showing. Defendants initiated the criminal proceeding against Plaintiff based on the same information that led to his arrest on March 8, 2017. For instance, on the day of his arrest, Plaintiff was processed at the precinct and received a desk appearance ticket. *See* Dkt. 63, Ex. J; *see also Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010) ("Under New York law, police officers can 'initiate' prosecution by filing charges or other accusatory instruments."). Several weeks after that, still based only on the information obtained on March 8, 2017, Officer Bozzo drafted the criminal court complaint. *See* Dkt. 63, Ex. K. Indeed, Plaintiff does not point to any facts in the record that Defendants "might reasonably have come to know in the period between [his] arrest and the initiation of the prosecution [against him] that could have undermined the existence of arguable probable cause." *McKay v. City of New York*, 32 F. Supp. 3d 499, 512 (S.D.N.Y. 2014).

While it is undisputed that the criminal proceeding was ultimately terminated in Plaintiff's favor, there is no genuine dispute of fact that shortly after the DA's office received the information negating probable cause – the June 5, 2017 letter from the Pennsylvania DMV acknowledging that one of its employees had altered the learner's permit – the office terminated the prosecution. *See* Dkt. 63, Ex. M. Given that this information was not known until months after commencing the prosecution, Defendants had probable cause to initiate the proceeding against Plaintiff in March 2017. *See Diop*, 50 F. Supp. 3d at 421 (explaining that what is relevant for a malicious prosecution claim

16

is "information discovered by a malicious prosecution defendant after the arrest, but before the commencement of proceedings").

Accordingly, because Defendants had probable cause to commence the proceeding against Plaintiff, they are thus entitled to summary judgment as to his malicious prosecution claim as well.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted. The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 62 and close the case.

Dated:  April 30, 2020
        New York, New York

_____
Ronnie Abrams
United States District Judge